We have four arguments scheduled on today's docket. We have consolidated two of the cases. And we also have two cases that have been submitted on the briefs. The first argument and the first consolidated case is In Re Orbital Technologies Corp. Ms. Fredman. What I've done is, because of the consolidation, I've given each side 20 minutes as opposed to your regular 15. Since we're dealing with mostly identical issues, perhaps you don't need all the time. But if you do, feel free to use it, okay? You may proceed. May it please the Court, my name is Heather Redmond and I represent the appellant, Orbital Technologies Corp. These cases began when an anonymous third-party requester asked for ex parte re-examination of two Orbital patents. In both cases, we have an examiner who relied on a machine translation of the key prior art reference, which he never entered into the file or disclosed to Orbital. Meanwhile, Orbital was relying on the translation of only the abstract and drawings, which Orbital had been told were the only necessary and pertinent portions of the Tomofuji reference. The result was a final rejection of all claims based on an unclear record and unfair procedure. I'd like to first dispose of the Office's argument that Orbital was not prejudiced by the Office's admitted procedural errors. First, we never had a clear record or description of the basis of the examiner's rejection. The examiner was arguing invalidity based on evidence to which we didn't have access. That evidence may have changed our responses. Perhaps we would have sought expert testimony. Perhaps we would have amended our claims during the re-examination. But the Office's errors deprived us of the opportunity to do so. Second, had Orbital actually seen the unreliable and incomplete machine translation on which the examiner was relying, we absolutely would have asked the Office to obtain more reliable evidence in the form of a competent translation. By declining the examiner's offer to reopen prosecution to make the Tomofuji translation part of the record, has Orbital waived any objection to the process in this case? So, clarification on the facts, Your Honor. I don't believe the record shows that we actually declined an offer to reopen the prosecution. That offer, if it was really made, came with the condition that we waive all of our other bases for appeal. And how that happened was basically it was raised that prosecution could be reopened. We said, of course you have discretion. But you said if it was really made, and I'm flipping to the page where it is made. Well, so it was made, what I'm saying is, A818. Which version is it? A818. So, what I'm saying though, Your Honor, is, was it made without conditions attached? Was it simply a, let's go back and do this right offer? Or was it, waive all of your other grounds for appeal in order to do this? What our response to that was, we understand that you have the discretion to reopen prosecution, but we believe we have other grounds for appeal that should be heard. Based on that, the examiner decided not to reopen prosecution, presumably because the examiner was not willing to allow us to preserve the other grounds for appeal when we did that. And so that was the examiner's choice to make after we acknowledged that the examiner did have the discretion  to our other grounds for appeal. So was the issue of the translation raised at that point? The issue of the translation at that point had been raised. We had never seen it at that point. At that point, we had never seen the translation. We had learned that the examiner had relied on a translation, but we had not seen it. And so we raised the issue in our appeal to the court. Was there a request for reconsideration on the basis of the translation issue? We did not learn about the translation issue until that ship had sailed, Your Honor. We learned about it prior to our appeal. And at that point, we weren't even really sure whether the examiner had relied on a translation or not. We raised it in our appeal to the board, and the interview to which Judge Walts was referring happened in between our appeal to the board and the examiner putting in an answer in the board proceeding. Did you decline the offer to reopen the prosecution? I don't believe that we declined the offer. Did you accept it? No, I don't think we accepted it either, Your Honor. If you didn't accept it, isn't that sort of a binary choice, binary situation? Well, I don't... You received it. That's what the offer was. It was received, right? It was received. If it had been accepted, you wouldn't be here now. Right? I'm stuck with the facts on the record, of course. I presume so. What the record shows is that there was a conversation about reopening prosecution or attaching it to the answer. In the interview summary, the examiner says that we said we would accept it attached to the answer. The examiner relied on... I thought the examiner said he relied on what you knew they had, that he hadn't relied on the translation. I'm sorry, Your Honor. In the examiner, when he issued his final office rejection, was he relying on the translation? That is what the examiner said, that the examiner was relying on the translation of the entire Tomofuji reference and, unbeknownst to us, had not actually used the abstract, which is what the IDS told us, the Information Disclosure Statement, told us the examiner was relying on. And where is that in the record, the final office action, where he's relying on the only translation? Okay, so... What page in the record? Oh, you mean that the... I'm sorry, that the examiner said he was relying on only the... That is actually in the examiner's answer, where the examiner says That's what I thought. Very clearly, I was not relying on the abstract. I was only relying on the full translation. And I'm sorry, I don't have that. Well, you said he relied on the underlying document. So that was not the English abstract. Well... So it was not the abstract. Right. The translation, this machine translation of the entire document is what the examiner says he was relying on. Well, to go back of it, you were given the opportunity to reopen the prosecution. And you say you're stuck with the record, meaning you can't tell from the record whether you declined or accepted the offer. Well, we're stuck with the record, too. And there's nothing in the record that indicates that you accepted the offer. It was an offer made to reopen. There's nothing that indicates that you accepted the offer. If we allow this case to go forward, aren't we just opening up these procedures for two, three, four bites at the apple? So, first of all, after the examiner's interview summary, we submitted an interview summary. And so that is at appendix 820, 821, and 822. And this is where we say that the... Page 20. So... That's the interview summary, yes. The examiner's interview summary is on 819. And our response to that is 820, 821. And so on 822, it says, the general outcome of the interview was that we stated a position that the finding of patentability is in order, not only for a lack of translation of Tomofuji, but also for the other reasons, and that it should be vacated. And so... There's also a note in here that says that we understand that the office has discretion to reopen prosecution based on appropriate procedures. But we submit that if prosecution is reopened, this is on page 821, the arguments in the appeal brief should still be considered on the merits. You have the machine... You've had the machine translation for some time, right? We got the machine translation attached to the answer. And so, did you make an argument in front of the board to show how you were prejudiced by not having had the machine translation? I mean, did you show why the examiner's final office rejection would be wrong? That this particular... I'm not talking about any harmful error here. Right. I mean, we certainly tried. We tried to make the argument to the board that not having had the machine translation deprived us of a complete record. Yeah, I know, but once you've got it, so you've got the translation, right? Right. And the examiner relied on the translation to show that the claims were obvious, right? Right. So, did you make the argument that the machine translation actually proves that the claims are not obvious? We did make that argument, but we made the other argument that you can't tell from the machine translation. There are too many errors and omissions in the machine translation to be able to tell what the entire scope of the prior art is. I mean, we're making an obvious determination. We have to know what the full scope and content of the prior art is. And what we're left with as evidence for what this key piece of prior art is is a machine translation that makes very little sense. There are a lot of passages in there that deal specifically with the way the cooling system works in the Tomofuji reference, with the way that the lights are mounted in the Tomofuji reference, that you can't tell what they say. We don't know whether they teach a way or toward this invention. We just can't tell. There are errors. There are omissions. It makes no sense. Who supplied the Tomofuji document in the first place? Was it the third-party requester? The third-party requester attached the Japanese language patent and only a translation of the abstract. Upon whom does the burden fall? Let's assume, for example, a third-party requester comes in and chucks a document into the proceeding, and you're sitting there, your patent is at stake. Whose obligation or whose burden is it to come forward and say, hey, this translation is inadequate. It's unfair to me. We need further information. Well, the initial burden falls on the third-party requester. The third-party requester threw the document in. So, you know, you're the reverse of a third-party beneficiary. You're the third-party harmful person that's going to get harmed by this. I would think maybe the burden ought to be on you to say, wait a second, that translation is not sufficient. Two issues. We're just curious. Are there any rules in the patent office about what happens? There are. And while you're answering, please answer Judge Clevenger's first question about who provided the machine translation. The examiner obtained the machine translation during the prosecution before even issuing the SNQ, obtained the machine translation, used it throughout the entire prosecution and never told us he had it. We didn't know. We went through the prosecution believing that the examiner was relying on the abstract. And here's why. The reason why is because the third-party requester said, I've attached all pertinent parts of the translation of the patent and the only thing that was attached was the abstract. Examiner does the same thing. You're using an interesting verb, obtained. And it's not answering my question. My question was, who provided? You're saying the examiner obtained. My understanding, Your Honor, is that the examiner plugged it into a Google Translate kind of thing and out came this. That's why we call it a machine translation. So back to the question, though, about who should be doing this. The patent office procedures say if a requester throws something like this in there, it's the office's responsibility to vacate the filing date. There are requirements for what a requester is supposed to put into the record when they bring this kind of a reexamination. And if there's a foreign language patent, they are supposed to attach a translation of all of the necessary and pertinent parts of that patent. And if they don't, they're not supposed to get a filing date. If they don't, who's supposed to object? Let's say if the examiner does something wrong, who's supposed to object? Your client? The examiner is supposed to object, Your Honor. But again, we didn't know. We thought that the only piece of prior art, the only bit of evidence that the examiner was relying on was the abstract and the drawing. And that was it. At the time, we didn't have anything to object to because we didn't know that the examiner had come to the conclusion that the abstract and the drawings were not the only necessary and pertinent parts  But at the end, you do agree that your client was offered an opportunity to avoid the circumstances we're in right now. Because if your client had accepted that invitation whenever it was, we wouldn't be here. Right? Well, we wouldn't be here today. We might be here on this ground. Again, later. And at that point, according to the examiner, we wouldn't be preserving our other grounds for objection. Where is the language that says that? That you're waiving everything else? Well, you're right. It doesn't say that. What it says in our response is the position we took in the interview was that we wanted to preserve the other grounds that we had for appeal. There was no communication during the interview as to what the examiner was actually going to do. And the examiner did not reopen prosecution. This is not a difficult pattern. We're talking about a light on top of an aquarium. And where do you place lights and a fan? I'm not totally convinced that the translation and I agree. It was a machine translation and there's errors. But it still did not provide the basis for the examiner's decision based on the technology at hand. So, what we're talking about though is a completely different means for cooling. The two kinds of lights. If it's an LED light like these are, you need to cool the actual driver engine, not the bulb. And so it is very important in the Tomofuji reference where and how the cooling was taking place. Because if the cooling mechanism was designed to cool the fluorescent bulb in the actual Tomofuji reference, then that would... But the reference discloses that cooling is necessary. For a fluorescent bulb, Your Honor. That's for the bulb, but for an LED then you're cooling the engine. Right. From what I can tell there's absolutely nothing in the Tomofuji reference that would teach you A, that you have to cool the engine, and B, that how to do it. You are into your rebuttal time. Okay. Thank you. May it please the Court. I'd like to actually start where Judge Reyna just left off, which is with the obviousness rejection, because I think a lot of the other aspects of this case flow from that. And so as you point out, it's what we would call a simple technology. It doesn't mean that it's necessarily unpatentable, but it means that it requires a different type of disclosure to make obvious. And what the prior art shows here is a fish tank with a housing mounted on top, a light bulb, and a fan. And there are other prior art references that supply the missing parts. For example, the motivation to use LEDs instead of the fluorescent light bulbs disclosed in Tomofuji. And also, there are also prior art references that describe the use of a fan to cool LEDs. So all of the elements are there, and all of them are very clear in the prior art, which is why I think we're having a mostly procedural discussion about the reexamination itself. And so, if I may, I'm going to just want to talk a little bit about the translation, the way it was used. And just based on my experience in dealing with a lot of international transactions and operations, you can have a translation that is poor, that doesn't pick up all the legal nuances and all of the expressions that weed lawyers and judges like to focus on. And the problem I'm seeing is that if we say it's okay for you to do this, for you to use these type of translations, and in this case we have a simple technology, but what about we're dealing with a pharmaceutical patent or something more difficult? Aren't we creating a danger here, a pitfall for future cases based on the translation? Judge is absolutely with or without the translation, I would say even setting aside the translation, even if they're correct on their procedural arguments, which I do not believe they are, but even if they were correct, setting aside the translation, the figures of Tomofuji combined with other evidence in the record, namely the fact that in most instances where a poor translation can lead to a bad result. That is undoubtedly true. Wouldn't the question be whether a person of skill in the art could look at a translation and either get it or not? I think it's if a person of skill in the art looked at the translation and  translation said water. Right. And it may use awkward language. And certainly we don't dispute that the translation has, pretty much if you've seen machine translations, they tend to look like this. They're words that are technical words or words of art that are not translatable or translate as something you wouldn't normally see. This is idiomatic. You get a very odd translation in parts. But the underlying prior reference in this case, the disclosure of that underlying reference combined with the translation combined with the other evidence and records is substantial evidence supporting the rejection. Now, when Judge Reina asked about complicated technologies, I would say absolutely. There may very well be cases where a machine translation is not going to be enough. The patent office relies on the  of the reference. It's just not practical for the patent office to obtain a certified or a hand translation. We would have to In instances where it doesn't, it relies on a translation and it's using one of these automated translations, knowing what you just did. And there are other instances, but let me just point you to the instance where I think Orbital expressed understanding that there was something beyond just the abstract being used in this case. And that's on A342. Your opponent says that they didn't know about the translation until the bus had arrived. So the objection relies on paragraphs one through six for rejections and no translation of these paragraphs has been made available. And then they go on and address the substance of the rejection. Nonetheless, they go on and address the substance of the objection and actually characterize Tomofuji in exactly the same way as the examiner was characterizing it for the purposes of the elements disclosed by that reference. So it definitely seems like they were aware of the fact that the examiner was using the Tomofuji reference, the primary Tomofuji reference. And there's instances in the 1299 appeal as well that I could cite you to if necessary, but they're similar. In the 1299 appeal, where the examiner, in his rejection, makes clear that he's referring to a part of the Tomofuji reference, the underlying Tomofuji reference, and not just to the abstract. So I think that there was definitely awareness that the text of Tomofuji was being considered as part of the rejection. Would you address a waiver question with which we started? Yeah, the waiver question, from my perspective, I think that the summary, the one thing that is clear from the two interview summaries is that the examiner was referring to a part of the Tomofuji reference, and that the appeal, nevertheless, went on. Your learned friend says, well, it was cabined with conditions. Well, frankly, I don't see that in either of the summaries, and in particular, in the examiner's summary, the way that the examiner put strings on these other arguments and said it would be waived because you reopened prosecution. We reopen prosecution all the time after an appeal brief. If you reopen the prosecution, you go back into the examiner's office, right? That's correct. You don't proceed further in front of the board. That's absolutely right. Whatever happens in front of the examiner happens. Then you get a final office action, and then you get briefs and whatnot, right? That is exactly what happened. Everything's on the table? Yes, that's correct. As I said, when a party raises an argument, it could be in a reexamination or a primary examination, to the board in an appellate brief, what happens is sometimes the examiner looks at it and says, huh, and it appears that this is exactly what happened here. The examiner read the brief and said, huh, yes, I should do something to correct that, or I should address that, and the best place to address it is as a non-final. Here, the issue was such that I think what he was trying to do was to spare them the time and expense. This is speculation, I just want to be clear. He was trying to spare them the time and expense of going through a non-final, a final, and then subsequently the appeal to the board when there was no material dispute and this is what the board found. There was no dispute over what the contents of the Tomofuji reference was. Again, the examiner wasn't using it for anything exotic. He was using it for exactly what the picture showed in Tomofuji. To the extent there was anything... Your adversary said that she couldn't point to any harm from what it was she finally got, but she said the translation was no good, so there were holes in the translation. There might have been something else. To the extent that there's... I don't think that that's a... I think that the ability to challenge what the examiner's findings are was... Let me take a step back. There's reasons related to why there was no waiver. They could have challenged the examiner's findings during the reexamination the first time around simply by obtaining their own translation of Tomofuji. If they wanted to challenge the examiner's findings, it seems like a natural thing to obtain your own translation of the underlying document and argue based upon that. Second, when the chance came up again, they had the very opportunity to go back to the examiner and say, we want another translation. That's true. That's absolutely true. From my perspective, if they want to do that, the best thing to do is send it back to the examiner and say, if our concern is the quality of the translation and the examiner submits his brief and you see the translation, maybe at that point you make the request to go back and reopen prosecution or maybe you just accept it the first time around and the examiner calls you up. So rather than saying, this translation has holes in it and we don't understand, you're then asking the examiner         examiner calls you up and you make the request to go back and reopen prosecution and the examiner calls you up and you make the request to reopen prosecution   examiner calls you up and you make the request to reopen prosecution and the you up and  make the